IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACY BUTLER,                    :        Civil No. 3:20-cv-176
                                 :
            Plaintiff            :        (Judge Mariani)
                                 :
    v.                           :
                                 :
P. ZDZIARSKI,                    :
                                 :
            Defendant            :

## MEMORANDUM

Plaintiff Stacy Butler ("Butler"), an inmate who was housed at all relevant times at the

United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"),

commenced this action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S.

388 (1971).[1] (Doc. 1). The matter is proceeding via a second amended complaint. (Doc.

30-1). The sole named Defendant is Patricia Zdziarski, a registered nurse employed by the

Federal Bureau of Prisons ("BOP") at USP-Canaan. (*Id.*). Presently before the Court is

Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc.

33). The motion is fully briefed and ripe for resolution. For the reasons set forth below, the

Court will grant the motion.

---

[1]   In *Bivens*, the United States Supreme Court created a federal tort counterpart to the remedy
created by 42 U.S.C. § 1983 as it applies to federal officers.

I.    **Allegations of the Second Amended Complaint**

On March 21, 2018, a USP-Canaan medical provider—not the Defendant—allegedly provided Butler the wrong medication during the evening pill distribution.[2]  (Doc. 30-1, pp. 3, 6, 9, 20, 21).  Butler alleges that after he ingested the wrong medication, he felt "disoriented, a rapid heartbeat, dizziness, drowsiness, fatigue and nausea," and was lying on the floor in his cell.  (*Id.* at p. 6).  Butler's cellmate pushed the emergency call button and a correctional officer arrived at the cell to assess the situation.  (*Id.* at p. 6, 21).  The correctional officer called the medical department and Defendant Zdziarski advised Butler to drink water and lay down.  (*Id.*).  Five minutes later, Butler's cellmate pushed the emergency call button a second time.  (*Id.*).  In response, Defendant Zdziarski and several correctional officers arrived at the cell.  (*Id.* at p. 6).  Defendant Zdziarksi allegedly told Butler to stand up and threatened to put ammonia packets up his nose and to have him placed in the special housing unit where he would be beat up.  (*Id.* at p. 6).

Butler asserts that correctional staff then escorted him to the medical department. (*Id.* at p. 7).  Once in the medical department, Butler alleges that he was shackled and placed in a patient room, he was forced to sit upright, and someone held his head while Defendant released ammonia packets in his nose.  (*Id.* pp. 7-8).  Butler further alleges that Defendant continued to release ammonia packets inside his nostrils in an attempt to have him agree that he was not given the wrong medication and that nothing was wrong.  (*Id.*).

---

[2]    Butler was allegedly given his cellmate's medication.  (Doc. 30-1, p. 6).

Butler alleges that he began to lose consciousness during this encounter. (*Id*. at p. 8).
Butler states he was then given a urinalysis, which was negative. (*Id.*). He was also
threatened that he would receive an incident report for feigning an illness and interfering
with count. (*Id.*).

## II.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege
"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must
aver "factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.
1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic
recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.
Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,
"[f]actual allegations must be enough to raise a right to relief above the speculative level."
*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)
(internal citations and quotation marks omitted). A court "take[s] as true all the factual
allegations in the Complaint and the reasonable inferences that can be drawn from those
facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

### A.   Eighth Amendment Deliberate Indifference to Medical Needs Claim

Butler appears to allege that Defendant was deliberately indifferent to his serious medical need, in violation of the Eighth Amendment, for failing to adequately treat him after he ingested the wrong medication.[3]  (Doc. 30-1, p. 19).  The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000).  In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs.  *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

---

[3]   In his reply brief to Defendant's motion to dismiss, Butler contends that "[t]his cause of action is not about deliberate indifference to medical needs" and "is not about medical treatment at all." (Doc. 58, p. 5). However, in the second amended complaint, Butler clearly states that he is seeking "recovery for medical deliberate indifference." (Doc. 30-1, pp. 3, 19, 26). Thus, out of an abundance of caution, the Court will address any potential Eighth Amendment claim based on deliberate indifference to a serious medical need.

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol*, 256 F.3d at 133 (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical

malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson v. Seiter*, 501 U.S. 294 (1991). Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

Butler's second amended complaint centers on his single encounter with Defendant on March 21, 2018, after he was allegedly provided the wrong medication by another medical staff member. (Doc. 30-1, pp. 6-9). After he ingested the medication, Butler alleges that he suffered from disorientation, a rapid heartbeat, dizziness, drowsiness, fatigue, and nausea. (*Id.* at p. 6). Defendant immediately treated Butler and made the medical decision to treat him with ammonia packets. Significantly, Butler does not allege that Defendant refused or delayed needed medical treatment or denied him medication. The Court concludes that Butler's allegations amount to, at most, a disagreement with Defendant's medical decision to use ammonia packets after Butler ingested the wrong medication. A showing of deliberate indifference requires more. *See Brown*, 903 F.2d at 278; *Pearson*, 850 F.3d at 535. Butler's own allegations provide that he received immediate medical attention and was treated by Defendant Zdziarski. Butler's dissatisfaction with the medical treatment decisions simply does not rise to a constitutional violation. The most that can be said of Butler's claim is that it asserts that Defendant's professional judgment was deficient. As articulated above, this is not enough to rise to the level of a constitutional violation and courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)); *Spruill*, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation). Moreover, there is no indication that Defendant's actions

were based on an ulterior motive beyond providing routine patient care.  *See Spruill*, 372

F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in

some way "connect[ ] his factual allegations to the alleged mental states" of the defendants).

Accordingly, the Court will grant Defendant's motion to dismiss the Eighth Amendment

medical care claim.

## B.   Eighth Amendment Excessive Force Claim

Butler alleges that, on March 21, 2018, he was escorted to the medical department,

he was shackled, forced to sit upright, and someone held his head while Defendant

released ammonia packets in his nose, in violation of the Eighth Amendment prohibition

against excessive force.  (Doc. 30-1, pp. 7-8, 23, 31-32).  The Eighth Amendment protects

prisoners from cruel and unusual punishment, including "the unnecessary and wanton

infliction of pain."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley*, 475 U.S. at

319); *see also* U.S. CONST. amend. VIII.  In an Eighth Amendment excessive force case,

the inquiry "is whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7.  Not

"every malevolent touch by a prison guard" violates the Constitution.  *Id.* at 9.  "The Eighth

Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from

constitutional recognition *de minimis* uses of physical force, provided that the use of force is

not of a sort 'repugnant to the conscience of mankind.'"  *Id.* (quoting *Whitley*, 475 U.S. at

327).  To establish an Eighth Amendment excessive force claim, an inmate does not need

to show that he suffered a significant, or even a more than *de minimis*, injury.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  Rather, the central issue is the force used by the officer, not the resultant injury.  *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

When determining whether a prison official has used excessive force, the court must consider the following factors: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'"  *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

Here, Butler failed to adequately allege that Defendant used excessive force against him on March 21, 2018.  Butler alleges that he was escorted to the medical department, he was shackled, forced to sit upright, and someone held his head while Defendant released ammonia packets in his nose.  (Doc. 30-1, pp. 7-8, 23, 31-32).  He also alleges that Defendant yelled at him and verbally threatened him while she continued to release ammonia packets in his nose.  (*Id.*).  These assertions fail to support an Eighth Amendment claim.

Butler does not address the need for application of force nor the relationship between the need and the amount of force used, and he does not state that he sustained *any* injury during this interaction.  *Whitley*, 475 U.S. at 319.  In a conclusory fashion, Butler

states that Defendant Zdziarksi "knowingly acted with a culpable state of mind with disregard to Mr. Butler's safety," and he fails to address whether Defendant made any effort to temper the severity of her actions. (Doc. 58, p. 5). Defendant's act of releasing ammonia packets into Butler's nose, coupled with her alleged verbal taunting, simply do not constitute cruel and unusual punishment in violation of the Eighth Amendment.

In sum, Butler's allegations fail to rise to the level of a constitutional violation. An inmate asserting a claim of excessive force must show that the force was applied "'maliciously and sadistically for the very purpose of causing harm' instead of 'in a good faith effort to maintain or restore discipline.'" *Robinson v. Danberg*, 673 F. App'x 205, 211 (3d Cir. 2016) (quoting *Hudson*, 503 U.S. at 6). Butler has failed to plausibly allege that Defendant's actions amounted to malicious force, intended to intentionally cause harm. The Court will grant Defendant's motion to dismiss this Eighth Amendment claim.

### C.   Abusive Language under the Fifth and Eighth Amendment

Butler asserts that his Fifth and Eighth Amendment rights were violated when Defendant Zdziarski was verbally abusive and unprofessional to him as prohibited by BOP Policy. (Doc. 30-1, pp. 3, 24). Butler's second amended complaint does set forth any injuries he sustained as result of the March 21, 2018 incident. (*See* Doc. 30-1). Defendant's alleged statements to Butler, without any accompanying physical injury, do not amount to malicious behavior violative of the Eighth Amendment, or under the Fifth Amendment's substantive due process clause. *See Dunbar v. Barone*, 487 F. App'x 721,

11

723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.) (substantive due process theory), *cert. denied*, 502 U.S. 879 (1991).  This claim fails because Butler cannot state a claim for cruel and unusual punishment under the Eighth Amendment or under the Fifth Amendment due process clause by alleging only verbal harassment or threats.

### D.    Qualified Immunity

Even if Butler had stated a colorable constitutional claim, the Defendant is nevertheless entitled to qualified immunity from this claim for damages.  In order to establish a civil rights claim, Butler must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction,

and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.  It

"provides ample protection to all but the plainly incompetent or those who knowingly violate

the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "Thus, so long as an official

reasonably believes that his conduct complies with the law, qualified immunity will shield

that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing

*Pearson*, 555 U.S. at 244).  Although qualified immunity is generally a question of law that

should be considered at the earliest possible stage of proceedings, a genuine dispute of

material fact may preclude summary judgment on qualified immunity.  *Giles v. Kearney*, 571

F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a

constitutional or federal right has been violated; and (2) whether that right was "clearly

established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555

U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two

*Saucier* prongs should be addressed first).  As stated, the Court finds that Butler failed to

establish the violation of a constitutional right.  Defendant simply could not have recognized

that her alleged verbal threats, and the use of ammonia packets to treat a patient who

inappropriately ingested medication, would violate a "clearly established statutory or

constitutional right[ ] of which a reasonable person would have known." *Wilson*, 526 U.S. at

609.  Therefore, Defendant is protected from liability by qualified immunity.

IV.     **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set

forth above, Butler's claims are legally and factually flawed; thus, the Court concludes that

curative amendment would be futile.  Because the Court finds that any amendment would

be futile, Butler will not be permitted leave to file a third amended complaint.  *See Jones v.*

*Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where

inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to

amend would be futile.")

V.      **Conclusion**

The Court will grant Defendant's motion (Doc. 33) to dismiss.  A separate Order shall

issue.

Robert D. Mariani
United States District Judge

Dated: February 25, 2021

14